United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 30, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 06-30892

GEORGE CRAWFORD,

Plaintiff-Appellant,

v.

BURL CAIN, Warden, Louisiana State Penitentiary,

Defendant-Appellee.

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans Division
2:04-CV-748

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

On January 7, 1997, George Crawford ("Crawford") and Larry Lindsey were convicted by a jury of first-degree murder in Louisiana state court. Both men were sentenced to life in prison without the possibility of parole. During postconviction proceedings, Crawford alleged, *inter alia*, that his conviction should be overturned because the prosecution withheld exculpatory

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

and impeachment evidence in violation of Brady v. Maryland and its progeny. On February 12, 2003, the Louisiana Fourth Circuit Court of Appeal issued a lengthy opinion denying him relief. The court agreed with Crawford that the prosecution had withheld relevant material to which he was entitled, but also concluded that the undisclosed evidence was not material for Brady purposes. Crawford began habeas proceedings in the Eastern District of Louisiana on March 15, 2004. On July 11, 2006, the district court agreed with the state court and denied the habeas petition. On appeal, the sole question before us is whether the state court was "objectively unreasonable" in its disposition of Crawford's Brady claim. We find that it was not and AFFIRM.

## I. FACTS

Shortly after 2:00 PM on September 22, 1994, Elijah Mitchell and Sheri Bailes were sitting in Bailes's black Corvette near the 2000 block of Thayer Street in the Fischer Housing Project in Algiers, Louisiana. Two men approached and began shooting into the car. Bailes was shot twice and killed. Mitchell was shot many times but survived, and later proved to be a key witness at trial.

Detective Anthony Graffeo was the lead detective in the case. He received a call from Shirley Davis, a resident of the Fischer Project, who said she witnessed the shooting. Davis told Graffeo she recognized one of the gunmen as Larry Lindsey, who was her sister's former boyfriend; the other she knew only as "George." Graffeo put together a photo array with a picture of Lindsey in it,

2

and Davis identified him. Police arrested Lindsey on October 6, 1994, and Lindsey stated that he was not involved in the shooting, but he had heard that the perpetrator was a black male by the name of George Crawford. Based on this information, Graffeo put together a photo array with a picture of Crawford in it. The police showed that photo to Shirley Davis and Elijah Mitchell, who had recovered somewhat since the shooting. Both of them identified Crawford as the shooter. Both also provided tape recorded statements to Graffeo that were not turned over to the defense.

At trial, the prosecution's case was based almost entirely on the testimony of Davis and Mitchell, along with the photographic identifications. Lindsey and Crawford were convicted by a jury of first-degree murder and sentenced to life in prison without the possibility of parole. During his postconviction proceedings, Crawford argued to the Fourth Circuit Court of Appeal in Louisiana that the prosecution had failed to turn over exculpatory and impeachment material as required by Brady v. Maryland, 373 U.S. 83 (1963). The Fourth Circuit issued a lengthy opinion that ultimately affirmed the sentence on the basis that the undisclosed evidence was not material for Brady purposes. State v. Crawford, 848 So.2d 615 (La. Ct. App. 2003). Crawford then began habeas proceedings in the Eastern District of Louisiana. The district court denied Crawford's habeas petition as to all claims, but granted a Certificate of Appealability solely as to the Brady claim. That appeal is now before us.

3

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d)(1), a federal court may grant a writ of habeas corpus if the state court's decision was either (1) "contrary to . . ." or (2) involved an "unreasonable application of" clearly established federal law, as determined by the Supreme Court of the United States. Crawford brings his claim only under the second standard, alleging that the Fourth Circuit unreasonably applied Brady and its progeny when it concluded that the undisclosed evidence was not material.

There are two ways in which a state court decision can involve an unreasonable application of the law. First, the court can identify the right legal rule but apply it unreasonably to the facts of a case, and second, the Court can unreasonably extend a legal principle to a new and inappropriate context, or unreasonably refuse to extend it to a context where it should apply. Williams v. Taylor, 529 U.S. 362, 405–07 (2000). Under this standard, we should only grant the writ when the state court's decision was erroneous and "objectively unreasonable." Id. at 409–11. In conducting this inquiry, we review the federal district court's findings of fact for clear error and its conclusions of law *de novo*. Thompson v. Cain, 161 F.3d 802, 805 (5th Cir. 1998) (citations omitted).

## III. DISCUSSION

"[T]he suppression by the prosecution of evidence favorable to

4

an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. To establish a Brady claim, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material. Kyles, 514 U.S. at 432–34 (1995); Spence v. Johnson, 80 F.3d 989, 994 (5th Cir. 1996) (citation omitted). "Favorable" evidence includes that which is exculpatory and that which could be used to impeach a prosecution witness. United States v. Bagley, 473 U.S. 667, 676–77 (1985).

The test for materiality is "whether the disclosure of the evidence would have created a reasonable probability that the result of the proceeding would have been different." United States v. Sipe, 388 F.3d 471, 485 (5th Cir. 2004) (internal quotation omitted); see also Kyles v. Whitley, 514 U.S. 419, 433–34 (1995) (citations omitted). Evidence may be material under Brady even when it is not admissible, provided that it satisfies the same test. Sipe, 388 F.3d at 485. The Supreme Court has identified four aspects of the materiality inquiry. First, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 434. Second, the materiality inquiry is "not a sufficiency of the evidence

test." Id. Rather, the reviewing court should ask whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435. Third, if the evidence is material, there is no need for a harmless error analysis. Id. Finally, though the court may have to go over each piece of evidence item by item, it must ultimately evaluate the cumulative effect of the evidence for purposes of materiality. Id. at 436.

A.  Whether or not the suppressed evidence was favorable to Crawford

There is no dispute that the prosecution did suppress evidence. It remains, however, for Crawford to show that the evidence was (a) favorable to his defense, and (b) material. Both the state court and the district court readily concluded that much of the suppressed evidence would have been favorable to Crawford's defense, and we agree. There are four separate documents that contained exculpatory or impeachment evidence. These include: (1) a supplemental police report; (2) Shirley Davis's pretrial statement; (3) Elijah Mitchell's pretrial statement; and (4) the 911 log. We summarize the relevant contents of those documents here before turning to the question of materiality.

*1.  The Supplemental Police Report*

The supplemental report contained three favorable statements: (1) When Shirley Davis initially called police, she stated that the perpetrators were Larry Lindsey and George *Ascort*; (2) Davis also

6

told police "she would come forward and give a statement only if she could be relocated from the Fisher Housing Project," because the perpetrators had threatened to kill her; and (3) On the morning after the shooting, an anonymous caller told Graffeo that the second shooter's name was possibly George *Jefferson*, and that he lived on the 200 block of LeBoeuf Court in the Fisher Project. The first of these statements would have conflicted with Davis's trial testimony that she did not know George's last name at the time of the shooting or when she first spoke to police. The second suggests bias, and thus fabrication. The third presents the possibility of a different shooter altogether.

### 2. Shirley Davis's Pretrial Statement

At least two portions of Davis's pretrial statement were favorable to Crawford. First, Davis said she knew George's name to be George *Caldwell*, which is inconsistent with both her trial testimony and her first statement to Graffeo. Second, her description of the shooters' clothing was different from what it was at trial. In her statement she told police that Lindsey was wearing a dark colored shirt, while George was wearing a purple and white long-sleeve shirt with a hood, but at trial the descriptions were effectively switched. There were other minor inconsistences, or possible inconsistencies, as well.[1]

---

[1]For instance, in the pretrial statement Davis states that "you couldn't really tell [the perpetrators] had guns on them when they first got out of the car," but at trial she said that the

7

### 3. Elijah Mitchell's Pretrial Statement

Two excerpts of Mitchell's pretrial statement are at least somewhat favorable to Crawford. First, the statement reveals that Mitchell did *not* know George's last name at the time of the shooting, which is plainly inconsistent with his trial testimony. Second, his statement that Lindsey used a 9 mm gun, while George used a "small caliber gun" might have been used to impeach Mitchell because evidence revealed the guns were actually the same type.

### 4. The 911 Log

Two portions of the 911 log were favorable to Crawford. First, one caller described a perpetrator as wearing a "multi-striped hooded shirt." Another stated that the two wore "a multicolor shirt and green pants" and "a colorful shirt and black jeans," respectively. This evidence is inconsistent with Mitchell's testimony that the second shooter wore a light colored shirt and tan pants. Second, the one caller said the shooters ran after the shooting, which is inconsistent with Davis's testimony that the shooters walked away from the scene.

### B.  Whether the favorable evidence was material

Having reviewed the favorable evidence, we must now consider whether the evidence satisfies the Supreme Court's test for

---

shooters did have guns in their hands when they got out of the car. Also, there is also a possible inconsistency in Davis's pretrial statement that she went up to the car and observed the victims after the shooting was over, and her testimony at trial that she went immediately inside.

8

materiality. It is clear to us that none of this evidence, standing alone, would have been sufficient to undermine confidence in the jury's verdict. However, as has already been stated, we must consider the materiality of the evidence *cumulatively*, in light of the record as a whole. <u>Kyles</u>, 514 U.S. at 436–37.

*1. The Impeachment of Elijah Mitchell*

The state court readily found the impeachment evidence immaterial as to Mitchell. Mitchell's statement that he knew Crawford's last name at the time of the crime was inconsequential in light of his testimony that he had known Crawford for over a month, and his ability to identify him in an untainted photo array. Similarly, Mitchell's statement about the size of the guns was immaterial because the jury knew there was an inconsistency between his account of the guns and Davis's account of the guns. Mitchell testified at trial that Crawford had a small gun and Lindsey did not, while Davis testified that both guns were "big." Any other inconsistencies between the testimony of Mitchell and Davis, or between Mitchell's testimony and the physical evidence, were aired at trial and thus fully presented to the jury. We cannot say that the state court's conclusions were objectively unreasonable.

*2. The Impeachment of Davis*

Crawford argues that Davis's real motivation for testifying was to obtain new housing, and notes that she changed George's last name several times over the course of the investigation. The state

court considered these arguments at length but ultimately found them unavailing. First, the court found that any evidence of bias would have done Crawford more harm than good because it would have opened the door to evidence that Davis had been threatened by the assailants.[2] Furthermore, the court noted that Davis subsequently declined the offer of new housing long before trial, but nonetheless proceeded to testify against Crawford as planned, which seriously undercuts its value as impeachment evidence. For those two reasons, then, the state court found that the suppressed evidence of bias was immaterial, and we cannot say that this conclusion was objectively unreasonable.

As to the many inconsistencies in Davis's various statements over time, including and especially the changes in George's last name, the state court concluded that any inconsistency was illusory. The jury did not know that Davis gave two incorrect names, but it did hear that Davis did not know George's last name at the time of the shooting. According to the state court, the difference between the two, if any, is minor, and means very little in light of the fact that she successfully identified Crawford in the photo array. Again, whether or not we agree with that conclusion, we surely cannot say it is objectively unreasonable. The same holds true for the other minor inconsistencies in Davis's

---

[2]In fact, the trial court granted Lindsey's motion to preclude any mention of threats on that very basis, and specified that if the defense mentioned the housing switch to show bias, that would open the door to evidence of threats.

testimony, such as her transposed descriptions of the perpetrators' clothing, or the differing versions in the 911 log. These inconsistencies do not affect Davis's credibility so much as to undermine confidence in the verdict.

*3. George Jefferson*

Crawford claims that the anonymous tipster's identification of a "George Jefferson" would have allowed the defense to point the finger at another suspect, and to illustrate that the police investigation was sloppy and unreliable. Graffeo did follow up on the lead, but found no "concrete information." 848 So.2d at 630. A "George Jefferson" did in fact live in or near the housing projects where the shooting occurred, but that name did not surface again after the very early stages of the investigation. The state appellate court found this omission immaterial because the jury "was aware that the police had the names of several Georges," id. at 631, particularly early on in the investigation, and while Davis and Mitchell were unsure of the last name, they both positively identified Crawford, whom they had known for some time. This conclusion was not objectively unreasonable.[3]

*4. Cumulative Impact*

---

[3]Crawford makes an additional argument in his brief that he might have been able to impeach Graffeo if he had had access to the Supplemental Report and Davis's pretrial interview. In so doing, however, Crawford misreads Graffeo's testimony to create inconsistencies where there are none. We find this argument unpersuasive and unsupported by the record.

11

Finally, Crawford suggests that the state court did not evaluate the evidence cumulatively. He relies largely on the fact that the court did not specifically quote the relevant language from Kyles on the question of cumulative impact. 514 U.S. at 436–37. We are not persuaded. The state appellate court cited the relevant excerpts from Brady and quoted at length from Kyles and other cumulative review cases. Though the court did not cite the precise language we have to signal its cumulative review, it is plain to us that the inquiry was conducted properly. In the end, the accounts of Davis and Mitchell were largely in line with one another and, of course, both knew Crawford personally and identified him in untainted photo arrays. Taken as a whole, the evidence does not support Crawford's contention that the state court was objectively unreasonable in concluding that the suppressed evidence was immaterial.

## V.  CONCLUSION

There is no doubt that the state failed to turn over to Crawford favorable evidence to which he was entitled. Nevertheless, the state court thoroughly considered whether the suppressed evidence was material according to the guidelines provided by the Supreme Court. For the reasons stated above, we cannot say that the state court's conclusions were objectively unreasonable, and we therefore AFFIRM the district court's denial of the petition.

12